**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Daniel S. Guerra (State Bar No. 267559)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
        dguerra@bursor.com
        jglatt@bursor.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN KUENDIG, MICHELE HADLEY, AURELIO MORALES, and GLEN NESBITT, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | JURY TRIAL DEMANDED |
| GOOGLE LLC, | |
| Defendant. | |

1    Plaintiffs Jonathan Kuendig, Michele Hadley, Aurelio Morales, and Glen Nesbitt

2   ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against

3   Google LLC ("Defendant").  Plaintiffs make the following allegations pursuant to the investigation

4   of their counsel and based upon information and belief, except as to allegations specifically

5   pertaining to themselves, which are based on personal knowledge.

6                                **NATURE OF THE ACTION**

7    1.     Plaintiffs bring this class action lawsuit on behalf of themselves and all other

8   similarly situated consumers ("Class Members") who purchased Defendant's Google Pixel 6a

9   mobile phone (the "Product").

10    2.     In 2022, Defendant introduced the Google Pixel 6a, a $449-$499 "lower-cost"

11   alternative to the premium Google Pixel 6.  The Product was the first in Defendant's "Pixel" line of

12   smartphones made with Google's Tensor processing chip.  Moving to this new chip allowed the

13   Product to offer improved capabilities from previous models.  As such, Google proudly proclaimed

14   that the Pixel 6 and Pixel 6a smartphones were "super fast and secure" with a "battery [that] lasts

15   up to 72 hours with Extreme Battery Saver."

16    3.     Unfortunately for consumers like Plaintiffs however, the Product's battery was

17   defective.  Consumers saw their Products overheat during charging and ordinary use, which caused

18   significant performance issues.  Worse, some consumers even experienced their phones

19   overheating and catching fire.

20    4.     To remedy this issue, Defendant issued a software update as part of its monthly

21   Pixel patch in July that further limited the Product's capabilities by reducing battery capacity and

22   charging performance which, in turn, reduced the Product's performance capacity.

23    5.     Accordingly, Plaintiffs bring claims against Defendant for (1) violation of

24   California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; (2) violation of

25   California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*; and (3) violation of

26   California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PARTIES**

6.      Plaintiff Jonathan Kuendig is a citizen of California who resides in Guerneville, California.  In August 2022, Plaintiff Kuendig purchased a Google Pixel 6a smartphone from Defendant's website and entered into a finance plan making monthly payments for the Product. Before doing so, Plaintiff reviewed Defendant's marketing on its Website, including statements that the Product was "[p]owered by Google Tensor, it's super fast and secure," and that the "battery lasts up to 72 hours with Extreme Battery Saver."[1]  Plaintiff reviewed these representations and warranties and reasonably understood that Defendant's Product was state-of-the-art, reliable, and ran on a safe and dependable battery.  These representations and warranties formed the basis of the bargain in that Plaintiff would not have purchased the Product or would have paid substantially less for it, had he known that the Product was prone to overheating that hinders the Product's performance and poses a danger to himself.  Plaintiff Kuendig has experienced his phone overheating during regular use, which has caused the phone's functionality to become impaired.

7.      Plaintiff remains interested in continuing to use the Product.  However, he is unable to determine if the Product is actually safe to use and if the Product can continue to be used due to the risk of overheating and possible resulting fires.  Plaintiff is also unable to know if he will be able to use the Product in the capacity he paid for as Defendant is seeking to remedy the threats posed by the overheating by reducing battery capacity and charging performance.  Because the battery plays a critical role in the Product's functionality, Plaintiff is at risk of having paid for a Product worth less—if anything—than the value he had agreed to absent Defendant's planned limitation on the Product's capabilities.

8.      Plaintiff Michele Hadley is a citizen of California who resides in Lafayette, California.  In November 2022, Plaintiff Hadley purchased a Google Pixel 6a smartphone from Defendant's website.  Before doing so, Plaintiff reviewed Defendant's marketing on its Website, including statements that the Product was "[p]owered by Google Tensor, it's super fast and

---

[1] WAYBACKMACHINE, *Google Pixel 6a with Fi*, available https://fi.google.com/about/phones/pixel-6a?id=CbqIZRQ84gUAEgi6iGUUPOIFAA%3D%3D.

secure," and that the "battery lasts up to 72 hours with Extreme Battery Saver."[2]  Plaintiff reviewed these representations and warranties and reasonably understood that Defendant's Product was state-of-the-art, reliable, and ran on a safe and dependable battery.  These representations and warranties formed the basis of the bargain in that Plaintiff would not have purchased the Product or would have paid substantially less for it, had she known that the Product was prone to overheating that hinders the Product's performance and poses a danger to herself.  Plaintiff Hadley has experienced her phone overheating during use which has caused the phone's functionality to become impaired.

9.    Plaintiff remains interested in continuing to use the Product.  However, she is unable to determine if the Product is actually safe to use and if the Product can continue to be used due to the risk of overheating and possible resulting fires.  Plaintiff is also unable to know if she will be able to use the Product in the capacity she paid for as Defendant is seeking to remedy the threats posed by the overheating by reducing battery capacity and charging performance.  Because the battery plays a critical role in the Product's functionality, Plaintiff is at risk of having purchased a Product worth less—if anything—than the value she had agreed to absent Defendant's planned limitation on the Product's capabilities.

10.    Plaintiff Aurelio Morales is a citizen of California who resides in Phelan, California.  In December 2022, Plaintiff Morales purchased a Google Pixel 6a smartphone from a Best Buy store in Hawthorne, California.  Before doing so, Plaintiff reviewed Defendant's marketing on its Website, including statements that the Product was "[p]owered by Google Tensor, it's super fast and secure," and that the "battery lasts up to 72 hours with Extreme Battery Saver."[3]  Plaintiff reviewed these representations and warranties and reasonably understood that Defendant's Product was state-of-the-art, reliable, and ran on a safe and dependable battery.  These representations and warranties formed the basis of the bargain in that Plaintiff would not have purchased the Product or would have paid substantially less for it, had he known that the Product was prone to overheating

---

[2] WAYBACKMACHINE, *Google Pixel 6a with Fi*, *supra* Note 1.

[3] WAYBACKMACHINE, *Google Pixel 6a with Fi*, available https://fi.google.com/about/phones/pixel-6a?id=CbqIZRQ84gUAEgi6iGUUPOIFAA%3D%3D.

1    that hinders the Product's performance and poses a danger to himself.  Plaintiff Morales has

2    experienced his phone overheating during regular use, which has caused the phone's functionality

3    to become impaired.

4        11.    Plaintiff remains interested in continuing to use the Product.  However, he is unable

5    to determine if the Product is actually safe to use and if the Product can continue to be used due to

6    the risk of overheating and possible resulting fires.  Plaintiff is also unable to know if he will be

7    able to use the Product in the capacity he continues to pay for as Defendant is seeking to remedy

8    the threats posed by the overheating by reducing battery capacity and charging performance.

9    Because the battery plays a critical role in the Product's functionality, Plaintiff is at risk of

10   continuing to make payments for a Product worth less—if anything—than the value he had agreed

11   to finance absent Defendant's planned limitation on the Product's capabilities.

12       12.    Plaintiff Glen Nesbitt is a citizen of California who resides in San Jose, California.

13   In February 2024, Plaintiff Nesbitt purchased a Google Pixel 6a smartphone from the Mint Mobile

14   website.  Before doing so, Plaintiff reviewed Defendant's marketing on its Website, including

15   statements that the Product was "[p]owered by Google Tensor, it's super fast and secure," and that

16   the "battery lasts up to 72 hours with Extreme Battery Saver."[4]  Plaintiff reviewed these

17   representations and warranties and reasonably understood that Defendant's Product was state-of-

18   the-art, reliable, and ran on a safe and dependable battery.  These representations and warranties

19   formed the basis of the bargain in that Plaintiff would not have purchased the Product or would

20   have paid substantially less for it, had he known that the Product was prone to overheating that

21   hinders the Product's performance and poses a danger to himself.  Plaintiff Nesbitt has experienced

22   his phone overheating during regular use, which has caused the phone's functionality to become

23   impaired.

24       13.    Plaintiff remains interested in continuing to use the Product.  However, he is unable

25   to determine if the Product is actually safe to use and if the Product can continue to be used due to

26   the risk of overheating and possible resulting fires.  Plaintiff is also unable to know if he will be

27
28   [4] WAYBACKMACHINE, *Google Pixel 6a with Fi*, available
     https://fi.google.com/about/phones/pixel-6a?id=CbqIZRQ84gUAEgi6iGUUPOIFAA%3D%3D.

1    able to use the Product in the capacity he continues to pay for as Defendant is seeking to remedy

2    the threats posed by the overheating by reducing battery capacity and charging performance.

3    Because the battery plays a critical role in the Product's functionality, Plaintiff is at risk of

4    continuing to make payments for a Product worth less—if anything—than the value he had agreed

5    to finance absent Defendant's planned limitation on the Product's capabilities.

6        14.    Defendant Google LLC is a Delaware limited liability company with its

7    headquarters at 1600 Amphitheatre Parkway, Mountain View, California 94093.  Defendant

8    markets, manufactures, distributes, and sells its line of Pixel android smartphones throughout

9    California and the United States.

10                                    **JURISDICTION AND VENUE**

11        15.    This Court has subject matter Jurisdiction over this action pursuant to the Class

12    Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2) because this is a class action in which at

13    least one member of the Nationwide Class is a citizen of a state different from Defendant, the

14    amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and the proposed

15    Classes contain more than 100 members.

16        16.    This Court has personal jurisdiction over the Defendant because Defendant

17    maintains its principal places of business in this District and because a substantial part of the events

18    or omissions giving rise to the claims asserted herein occurred in this District.

19        17.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial

20    part of the events or omissions giving rise to the claims asserted herein occurred in this District and

21    because Defendant maintains its principal places of business in this District.

22                                       **FACTUAL ALLEGATIONS**

23    **A.    Google Pixel Mobile Phones**

24        18.    In 2016, Defendant Google jumped into the smartphone market with the release of

25    its first Pixel-branded smartphone called "Google Pixel."  Each year since, it has released at least

26    one updated version touting new features.[5]

---

[5] Noah Hunter, *Every Google Pixel Generation: A Full History Of Release Dates*, IGN (Mar. 21, 2025), *available* https://www.ign.com/articles/every-google-pixel-phone-release-date-in-order.

27

28

1    19.    Although Defendant has struggled to overcome competitors like Apple and

2    Samsung in the highly competitive smartphone market, "Google was the only major Android

3    device manufacturer to grow market share in the US in 2023."[6]  This growth was due, in part, to

4    Defendant's reputation: "Google Pixel devices are consistently among the best Android phones

5    available[.]"[7]

6    20.    Consumer interest in Defendant's phones has continued to rise.  "Google's market

7    share in North America jumped from 4.76% in September 2024 to an impressive 12.9% in October

8    2024—a nearly threefold increase in just a month.  If true, this boost gives Google a market share

9    28 times that of [one competitor] and four times that of Motorola."[8]

10    21.    To date, Google has released nine Pixel generations.  Starting with the Google Pixel,

11    Google has since released the Google Pixel 2, Google Pixel 3 and 3a, Google Pixel 4 and 4a,

12    Google Pixel 5 and 5a, Google Pixel 6 and 6a (the generation at issue in this Complaint), Google

13    Pixel 7 and 7a, Google Pixel 8 and 8a, and Google Pixel 9 and 9 Pro.  Defendant is set to release

14    the Google Pixel 10 in August 2025.[9]

15    **B.    Google Pixel 6 and 6a Bring Major Performance Improvements Through
      Google's New Tensor Chip**

16
17    22.    In October 2021, Defendant released the Google Pixel 6.  The Pixel 6 offered

18    consumers a radical departure from the previous Pixel 5.  Physically, "[t]he frame of the Pixel 6

19    [was] made of matte aluminum for a cool and soft touch when handling it.  In comparison, the

20    Pixel 5 [was] a bit warmer[.]"[10]

21    _____

22    [6] Steven Shaw, *Google Pixel Market Share Grows In US Despite A Decline In Phone sales
      Overrall*, YAHOO!TECH (Mar. 21, 2024), *available* https://tech.yahoo.com/phones/articles/google-
      pixel-market-share-grows-134244045.html.

23    [7] *Id.*

24    [8] Sanuj Bhatia, *Google's US Market Share Soars As Strong Pixel 9 Sales Help Surpass Motorola
      and OnePlus*, ANDROID POLICE (Nov. 4, 2024) *available* https://www.androidpolice.com/googles-
      us-market-share-soars-strong-pixel-9-sales/.

25
26    [9] Noah Hunter, *supra* Note 5.  Several generations of the Google Pixel also include a "Google Pixel
      Fold" version which is a flip phone and a more powerful "Pro" edition.

27    [10] Mariyan Slavov, *Google Pixel 6 vs Pixel 5: Everything Is New!*, PHONE ARENA (Apr. 19, 2023)
      *available* https://www.phonearena.com/reviews/google-pixel-6-vs-pixel-
      5_id5077#:~:text=Google%20Pixel%206%20vs%20Pixel%205:%20Design,-
      Tri%2Dtone%20glass&text=From%20the%20get%2Dgo%2C%20the,very%20distinct%20look%2

28

_____

23. First, the Pixel 6 screen was slightly larger than the Pixel 5. This accompanied an overall display improvement.

24. Indeed, the display's color accuracy[11] became more precise than the previous generation:



*Pixel 6 Color Accuracy Chart[12]*



*Pixel 5 Color Accuracy Chart[13]*

---

0and%20feel.&text=The%20Pixel%206%2C%20on%20the,era%20with%20its%20biometry%20solution.

[11] The Color accuracy chart gives an idea of how close a display's measured colors are to their referential values. The first line holds the measured (actual) colors, while the second line holds the reference (target) colors. The closer the actual colors are to the target ones, the better.

[12] Mariyan Slavov, *supra* note 10.

[13] *Id.*

25.    Most significantly, in producing the Pixel 6, "Google decided to divorce [its previous chip supplier] and develop its own silicon named Tensor"[14]  The new chip showed immediate improvement in the phone's speed versus the previous generation:[15]



26.    But with this change came meaningful implications for the phone's battery capacity. As commentators have noted, the previous "Snapdragon 765G chipset [was] not exactly power hungry and contribut[ed] to the good battery life seen throughout benchmarks"[16] of the Pixel 5 and previous generations.

27.    To bridge this gap, Defendant upgraded the phone's battery capacity.  With this longer lifespan, independent tests found significantly longer web browsing time and video streaming time than the Pixel 5[17]:

**Web browsing test:**



**YouTube streaming test:**



---

[14] *Id.*

[15] *Id.*

[16] Mariyan Slavov, *supra* note 10.

[17] *Id.*

### a.  *<u>Google Introduces The Pixel 6a</u>*

28.    In July 2022, Defendant released the Google Pixel 6a, billed as a "more affordable version of the company's premium Pixel 6 and Pixel 6 Pro phones."[18]

29.    Despite the slightly smaller screen and slightly cheaper $449 price than the Pixel 6, the Pixel 6a ran "on the same Google Tensor processor as the premium Pixel 6 series, ***which is unusual for an 'a' model phone.***  Those phones have typically run on processors that ***that are less powerful*** than those in the premium models[.]"[19]  For this reason, consumers like Plaintiffs expected that "the Pixel 6a should have similar performance as the premium Pixel 6 phones" despite minor reductions in memory space and battery life.[20, 21]

30.    For that reason, Google proudly described the Google Pixel 6a as "the most affordable Google phone that adapts to you.  Powered by Google Tensor, it's super fast and secure."[22]

31.    Indeed, Google's "a" series "truly hit its stride with the Pixel 6a … which brought Google's flagship Tensor processor to a mid-range price point."[23]

## II.    CONSUMERS REPORT OVERHEATING AND DIMINISHED CAPABILITY WITH THE GOOGLE PIXEL 6A.  UNFORTUNATELY FOR CONSUMERS, DEFENDANT'S SOLUTION IS TO DIMIINISH CAPACITY FURTHER

32.    Despite Google's boasting, owners of Defendant's power Pixel 6a have reported dangerous battery overheating that diminishes the phone's capability.

33.    Even more concerning, in some instances, the phones have caught fire, causing the phone to warp and melt.

---

[18] Antonio Villas-Boas, *Google's Next Big Smartphone Launch Is The Pixel 6a, A Smaller Budget Version Of The Premium Pixel 6—Here's What You Need To Know*, BUSINESS INSIDER (May 11, 2022), *available* https://www.businessinsider.com/guides/tech/google-pixel-6a-price-release-date-specs-features.

[19] *Id.*

[20] *Id.* (emphasis added).

[21] Rajesh Pandey & Cale Hunt, *Google Pixel 6a vs. Pixel 6: What Are The Differences?* ANDROID POLICE (Aug. 18, 2023) *available* https://www.androidpolice.com/google-pixel-6a-vs-pixel-6/.

[22] WAYBACKMACHINE, *Google Pixel 6a with Fi*, *supra* Note 1.

[23] Mishaal Rahman, *Warning: Google Will Soon Nerf The Pixel 6a's Battery Due To An Overheating Issue*, ANDROID AUTHORITY (June 11, 2025) *available* https://www.androidauthority.com/pixel-6a-battery-overheating-warning-3566640/.

---

34.    "Over the past months, [Android Authority] has spotted as many as four separate instances of the device catching fire – with the first report in December 2024 and the latest one [in early June 2025]."[24]

 

35.    This critical safety defect poses a risk to consumers who charge the phones in their home and carry them around in their pockets.

36.    Defendant is well aware of this issue.  Indeed, Defendant published a page titled "Help keep your Pixel phone from feeling too warm or hot," where it advises consumers to reduce charging speeds, phone performance, turn off the camera, and disable other features.[25]

37.    In fact, recently, Defendant issued a recall of its Google Pixel 4a that was released in 2020.  Just like the Pixel 6a here, the Pixel 4a was experiencing overheating battery issues that presented fire hazards.[26]  There too, "the search engine giant's [sic] began rolling out the Pixel 4a

---

[24] *Id.*

[25] PIXEL PHONE HELP, *Help Keep Your Pixel Phone From Feeling Too Warm Or Hot*, Google, *available* https://support.google.com/pixelphone/answer/3333708?hl=en.

[26] Jack Purcher*, Google Has Reportedly Started To Recall An Older Mid-Range Pixel 4a Model Smartphone Due To A Battery Issue That Could Be A Fire Hazard*, PATENTLY APPLE (Mar. 12, 2025) *available* https://www.patentlyapple.com/2025/03/google-has-reportedly-started-to-recall-an-older-mid-range-pixel-4a-model-smartphone-due-to-a-battery-issue-that-could-be-a-f.html.

Battery Performance Program update to the device.  This software update was set to ring a new battery management feature on the Pixel 4a.  The idea was to improve stability of the battery's performance on the aging model.  However, it had the opposite effect as many users complaint [sic] of their devices seeing degraded battery life.  Some users were facing a complete battery discharge in mere minutes."[27]

38.    Instead of learning from its previous mistakes, to remedy the overheating and fire danger posed by the Pixel 6a battery defect, Defendant introduced a similar software update to a "subset" of Google Pixel 6a owners' phones.  This update, Defendant says, "should 'reduce the risk of potential battery overheating,'"[28]  Unfortunately for consumers however, this update will permanently throttle their Product's capabilities by "reducing battery capacity and charging performance once 400 cycles have been reached."[29]

39.    Although 400 cycles may sound like a distant number, "400 cycles will be around a year to two years of usage for most people."[30]  In other words, Defendant's mandatory July Pixel software patch throttled the capabilities of Plaintiffs' and similarly situated consumers' phones.

40.    Indeed, battery performance is critical to a phone's reliability and functionality. This is because an inoperable or defective battery will not be able to deliver the power that the phone's software and components need to function.  This is especially true in cases like this one, where a more powerful processor needs to draw more power to drive the upgraded components of the phone.

41.    Unfortunately for Plaintiffs and similarly situated consumers that have had their Google Pixel 6a phones throttled, it is not clear that the throttling software rendered their phones safe to use.  "Google says the update is necessary to limit the risk of battery failure, but it would

---

[27] *Id.*

[28] David Nield, *Pixel 6a Phones Keep Catching Fire, So Google Is Going To Put limits On Their Batteries*, TECHRADAR (June 12, 2025) *available* https://www.techradar.com/phones/google-pixel-phones/pixel-6a-phones-keep-catching-fire-so-google-is-going-to-put-limits-on-their-batteries.

[29] *Id.*

[30] James Peckham, *Google Is About To Nerf Pixel 6a Batteries After Phones Catch Fire*, PC MAG (June 13, 2025) *available* https://www.pcmag.com/news/google-is-about-to-nerf-pixel-6a-batteries-after-phones-catch-fire.

---

seem that in at least one case, even this heavy-handed update wasn't enough—a user has reported their up-to-date Pixel 6a recently exploded overnight."[31]

42.    A Google Pixel 6a owner reported that "their [Google] Pixel 6a caught fire while they were sleeping on Saturday (July 26)."[32]  The consumer also provided photos showing "an extensively burned Pixel 6a, including a melted screen, a partially melted case, and charred internals."[33]

  

43.    "Google's half measures are forcing its customers to continue using hobbled devices that may still burst into flames, and that doesn't seem like a great way to manage the situation."[34]

44.    Although Defendant is in the best and exclusive position to know the true composition and contents of its Product, Plaintiffs satisfy the requirements of Rule 9(b) by alleging the following facts with particularity:

(A)    **WHO:** Defendant Google LLC**.**

---

[31] Ryan Whitwam, *Another Google Pixel 6a catches fire after battery-nerfing update*, arsTECHNICA (July 28, 2025) *available* https://arstechnica.com/gadgets/2025/07/another-google-pixel-6a-catches-fire-after-battery-nerfing-update/.

[32] Hadlee Simons, *A fifth Pixel 6a just caught fire, and it seems like Google's update isn't enough*, ANDROID AUTHORITY (July 28, 2025) *available* https://www.androidauthority.com/google-pixel-6a-battery-fire-after-update-3581462/.

[33] *Id.*

[34] Ryan Witwam, *supra* note 31.

(B)    **WHAT:** Defendant's conduct here was, and continues to be, fraudulent because it represented that its Product was fit for use as a smartphone—one "[p]owered by Google Tensor, it's super fast and secure," and that the "battery lasts up to 72 hours with Extreme Battery Saver" despite being built with a defective battery.  Nonetheless, Defendant continued to make these representations and warranties to consumers while issuing an update further limiting the battery's capacity and thus the phone's functionality, speed, and charging capabilities.

(C)    **WHEN**:  Defendant made these material representations and warranties at the point of sale, on its website.  Plaintiffs viewed and relied on these representations and warranties, understanding them to mean that the Product offered reliably fast performance and charging abilities.

(D)    **WHERE:**  Defendant's representations and warranties were uniform and pervasive throughout California and the United States, carried through material misrepresentations, warranties, and omissions at its points of sale.

(E)    **HOW:**  Defendant made material misrepresentations about the capabilities of its phone and omitted the Product's defects and corresponding unreasonable safety risks.  These defects cause the phone to have impaired functionality and risk causing fires.

(F)    **WHY IT IS FALSE:**  Relying on the inclusion of Defendant's then-new tensor chip, Defendant represented and warranted to consumers like Plaintiffs that the Product had improved capabilities including quick speed and fast charging.  However, because of the defective battery, the performance of the phone is impaired.  Defendant's solution is to further impair the purportedly fast charging and limit the battery life, thereby further impairing the Product's function.

(G)    **INJURY:**  Plaintiffs and Class Members were injured in that they paid a price-premium or otherwise paid more for the Product than they would have had they known that Defendant's representations about the capabilities of its Product were false and misleading and that the Product posed an unreasonable safety risk.

1

## CLASS ALLEGATIONS

2        45.    Plaintiffs bring this matter on behalf of themselves and all others similarly situated

3  in the following Classes (collectively, the "Classes"):

4            ***Nationwide Class.***  All natural persons in the United States who purchased the
             Google Pixel 6a during the applicable statute of limitations period.

5        46.    Plaintiffs also seek to represent the following Subclass:

6            ***California Subclass.***  All natural persons in the State of California who purchased

7            the Google Pixel 6a during the applicable state of limitations period.

8        47.    Excluded from the Classes are: (1) any Judge or Magistrate presiding over this

9  action and any members of their families; (2) Defendant, Defendant's subsidiaries, parents,

10 successors, predecessors, and any entity in which Defendant or its parent have a controlling interest

11 and its current or former employees, officers, and directors; and (3) Plaintiffs' counsel and

12 Defendant's counsel.

13       48.    **Numerosity.**  Class Members are so numerous that joinder of all members is

14 impracticable.  Plaintiffs believe that there are millions of people who purchased the Product and

15 who have been injured by Defendant's overheating risk and corresponding performance issues.

16 While the exact number of members of each Class is unknown to Plaintiffs at this time, such

17 information can be ascertained through appropriate discovery from records maintained by

18 Defendant and its agents.

19       49.    **Commonality and Predominance.**  The questions of law and fact common to the

20 Classes, which predominate over any questions that may affect individual class members include,

21 but are not limited to:

22            (a)    Whether the Product's battery is at risk of overheating;

23            (b)    Whether the Product's battery overheating risks causing the Product to catch
                    fire;

24            (c)    Whether the Product's performance is negatively affected by the battery's
                    overheating;
25
26            (d)    Whether Defendant's update to limit the Product's battery capacity and
                    charging performance risks causing the Product's performance to suffer;

27            (e)    Whether Defendant's update to limit the Product's battery capacity and
                    charging performance resolved the unreasonable safety risk of the Product
28                  overheating and catching fire;

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    14

(f)    Whether Defendant was aware that the battery risked overheating before putting the Product on the market; and

(g)    Whether the Product's overheating presents an unreasonable safety hazard to consumers.

50.    **Typicality.** The claims of the named Plaintiffs are typical of the claims of the members of the Classes because the named Plaintiffs, like other members of the Classes, purchased Defendant's defective Product.

51.    **Adequate Representation.** Plaintiffs have retained and are represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this class action. Neither Plaintiffs, nor their counsel, have any interest adverse to, or in conflict with, the interests of the absent members of the Classes. Plaintiffs are able to fairly and adequately represent the interests of the Classes. Plaintiffs have raised viable statutory claims of the type reasonably expected to be raised by members of the Classes and will vigorously pursue those claims. If necessary, Plaintiffs may seek leave of this Court to amend this complaint to include additional Class Representatives to represent the Classes or additional claims as may be appropriate.

52.    **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Classes is impracticable. Even if every member of the Classes could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system, resulting in multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Classes. Plaintiffs anticipate no difficulty in the management of this action as a class action. Class-wide relief is essential to compel compliance with California's consumer protection laws.

1

2

**CAUSES OF ACTION**

**COUNT I**

**Violation of California's Consumers Legal Remedies Act ("CLRA")**
**California Civil Code §§ 1750, *et seq.***
**(On Behalf of Plaintiffs and the Classes)**

3

4

5        53.       Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

6        54.       Plaintiffs bring this claim individually and on behalf of the Nationwide Class and

7  California Subclass.

8        55.       Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods … have sponsorship,

9  approval, characteristics, ingredients, uses, benefits, or quantities which they do not have…."

10       56.       Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a

11  particular standard, quality, or grade, or that goods are of a particular style or model, if they are of

12  another."

13       57.       Civil Code § 1770(a)(9) prohibits "advertising goods … with intent not to sell them

14  as advertised."

15       58.       Defendant violated Civil Code §§ 1770(a)(5), (a)(7), and (a)(9) by representing that

16  the Product had capabilities that could not, in reality, be supported for a prolonged period of

17  ownership because of the defective battery.

18       59.       Defendant further violated the CLRA by issuing a mandatory update to Plaintiffs'

19  and similarly situated consumers' phones that caused Plaintiffs' and Class Members' to further lose

20  operating capacity by limiting the capacity and charging performance of the Product's battery.

21       60.       On June 24, 2025, prior to filing this action, Plaintiffs sent a pre-suit notice letter

22  pursuant to Cal. Civ. Code § 1782.  The letter was sent certified mail, return receipt requested, and

23  provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the

24  unlawful, false, and deceptive practices alleged herein.  Defendant failed to remedy the issues

25  raised in the letter.

26       61.       Pursuant to Cal. Civ. Code §§ 1780(a)(1)-(5) and § 1780(e), Plaintiffs and the

27  members of the Classes seek (1) actual and punitive damages, (2) restitution, (3) injunctive relief,

28

1    (4) reasonable attorneys' fees and litigation costs, and any other relief the Court deems proper

2    under the CLRA.

3                                    **COUNT II**
                     **Violation of California's Unfair Competition Law ("UCL")**
4                         **Cal. Bus. & Prof. Code § 17200, *et seq.***
                          **(On Behalf of Plaintiffs and the Classes)**
5

6         62.    Plaintiffs incorporate the foregoing allegations as if fully stated herein.

7         63.    Plaintiffs bring this claim on behalf of themselves and members of the Nationwide

8    Class and California Subclass against Defendant.

9         64.    The UCL prohibits unfair competition in the form of "any unlawful, unfair, or

10   fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any

11   act." Cal. Bus. & Prof. Code § 17200. A business act or practice is "unlawful" if it violates any

12   established state or federal law. A practice is unfair if it (1) offends public policy; (2) is immoral,

13   unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. The UCL

14   allows "a person who has suffered injury in fact and has lost money or property" to prosecute a

15   civil action for violation of the UCL. Cal. Bus. & Prof. Code § 17204. Such a person may bring

16   such an action on behalf of himself or herself and others similarly situated who are affected by the

17   unlawful and/or unfair business practice or act.

18        65.    Defendant's acts, as described above, constitute unlawful, unfair, and fraudulent

19   business practices pursuant to California Business & Professions Code §§ 17200, *et seq.*

20        66.    Defendant has violated the UCL's proscription against engaging in **Unlawful**

21   **Business Practices** through its violations of California's False Advertising Law ("FAL"), Cal.

22   Bus. & Prof. Code § 17500, *et seq.* and Cal. Civ. Code § 1770(a)(5), (a)(7), and (a)(9) as alleged

23   above.

24        67.    Defendant has also violated the UCL's proscription against engaging in **Unfair**

25   **Business Practices**. Defendant's acts, omissions, misrepresentations, practices and nondisclosures

26   as alleged herein also constitute "unfair" business acts and practices within the meaning of

27   Business & Professions Code § 17200, *et seq.* in that Defendant's conduct is substantially injurious

28   to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                17

gravity of the conduct outweighs any alleged benefits attributable to such conduct.  Defendant sold its nearly-$500 Product by representing and warranting that the Product had functional capabilities that, because of its defective battery, it does not.  Defendant omitted the fact that its defective battery renders its representations about the Product's functionality untrue and misleading while also failing to disclose that the defect poses an unreasonable safety risk to consumers.

68.     There were reasonably available alternatives to further Defendant's legitimate business interest such as disclosing the risk or replacing the Product's battery but Defendant never did so.  Instead, Defendant's remedy is to further limit the Product's capacity.

69.     Plaintiffs and members of the Classes suffered a substantial injury by virtue of purchasing the Product as a result Defendant's unlawful and unfair marketing, advertising, misrepresentations, and omissions about the true nature of the Product.

70.     There is no benefit to consumers or competition from Defendant's deceptive marketing and omission of material facts about the true nature of the Product.

71.     Plaintiffs and the members of the Classes had no reasonable way of discovering the defect.  Thus, they could not have reasonably avoided the injury each of them suffered.

72.     The gravity of the consequences of Defendant's conduct as described outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, and is substantially injurious to Plaintiffs and the other members of the Classes for the reasons set forth above.

73.     Pursuant to Federal Rule of Civil Procedure 8(d)(2), Plaintiffs make the following allegations in this paragraph as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action will not succeed.  Plaintiffs and the members of the Classes may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy at law, if the Court requires them to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the UCL, because Plaintiffs may not be able to establish each member's individualized understanding of Defendant's misleading representations as described in this Complaint.  But the

1    UCL does not require individualized proof of deception or injury by absent class members.  In

2    addition, Plaintiffs and the members of the Classes may be unable to obtain such relief under other

3    causes of action and will lack an adequate remedy at law if Plaintiffs are unable to demonstrate the

4    requisite *mens rea* (intent, reckless, and/or negligence) because the UCL imposes no such *mens rea*

5    requirement and liability exists even if Defendant acted in good faith.

6            74.    Restitution and/or injunctive relief may also be more certain, prompt, and efficient

7    than other legal remedies requested herein.  The return of the full premium price and/or an

8    injunction requiring either adequate disclosure of the defect and corresponding safety risk or repair

9    and/or replacement of the batteries (instead of updating Plaintiffs' Products to further limit their

10   capabilities), would serve to place Plaintiffs and members of the Classes in the position they would

11   have been in had Defendant's wrongful conduct not occurred.

12           75.    Pursuant to California Business and Professional Code § 17203, Plaintiffs and the

13   members of the Classes seek an order of this Court that includes, but is not limited to, an order

14   requiring Defendant to (a) provide restitution to Plaintiffs and the other members of the Classes;

15   (b) disgorge all revenues obtained as a result of violations of the UCL; and (c) pay Plaintiffs and

16   the Class Members' attorneys' fees and costs.

17                                    **COUNT III**
18                      **Violation of California's False Advertising Law**
                         **Cal. Bus. & Prof. Code § 17500, *et seq.***
19                      **(On Behalf of Plaintiffs and the Classes)**

20           76.    Plaintiffs incorporate the foregoing allegations as if fully stated herein.

21           77.    Plaintiffs bring this claim on behalf of themselves and members of the Nationwide

22   Class and California Subclass against Defendant.

23           78.    The FAL makes it "unlawful for any person … to make or disseminate or cause to

24   be made or disseminated before the public in this state, … [in] any advertising device … or in any

25   other manner or means whatever, including over the Internet, any statement, concerning …

26   personal property or those services, professional or otherwise, or … performance or disposition

27

28

thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code § 17500.

79.     Defendant violated the act by misrepresenting the true reliability of the Product's functionality and performance, greatly overrepresenting its capabilities despite containing a critical performance and safety defect.  Defendant omitted the fact that the Product contains this defect which Defendant remedied by further reducing the Product's capabilities.

80.     The misrepresentations by Defendant and the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute a violation of Cal. Bus. & Prof. Code § 17500, *et. seq*.

81.     Defendant knew or should have known that its advertising claims are misleading and/or false.

82.     Defendant knew or should have known, through the exercise of reasonable care, that its representations were false and misleading and likely to deceive consumers and cause them to purchase Defendant's Products.

83.     Defendant's wrongful conduct is ongoing and part of a general practice that is still being perpetuated and repeated throughout the State of California and nationwide.

84.     Pursuant to Federal Rule of Civil Procedure 8(d)(2), Plaintiffs make the following allegations in this paragraph as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action will not succeed.  Plaintiffs and the members of the Classes may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy at law, if the Court requires them to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the FAL because Plaintiffs may not be able to establish each member's individualized understanding of Defendant's misleading representations as described in this Complaint.  But the FAL does not require individualized proof of deception or injury by absent class members.  In addition, Plaintiffs and the members of the Classes may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiffs are unable to demonstrate the

requisite *mens rea* (intent, reckless, and/or negligence), because the FAL imposes no such *mens rea* requirement and liability exists even if Defendant acted in good faith.

85.    Because a benefit was obtained unlawfully, it would be unjust and inequitable for Defendant to retain it without paying the value thereof.  Accordingly, Plaintiffs seek restitution on behalf of themselves and the Members of the Classes.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgement against Defendant as follows:

(a)    For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiffs as representatives of the Classes, and naming Plaintiffs' attorneys as Class Counsel to represent the Classes;

(b)    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(c)    For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

(d)    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)    For prejudgment interest on all amounts awarded;

(f)    For an order of restitution and all other forms of equitable monetary relief;

(g)    For injunctive relief as pleaded or as the Court may deem proper; and

(h)    For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all claims so triable.

Dated:  August 5, 2025                    **BURSOR & FISHER, P.A**.

By:    /s/ *L. Timothy Fisher*
       L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Daniel S. Guerra (State Bar No. 267559)
Joshua B. Glatt (State Bar No. 354064)

1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
dguerra@bursor.com
jglatt@bursor.com

*Attorneys for Plaintiff*

**CLRA VENUE DECLARATION**

I, L. Timothy Fisher, declare as follows:

      1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiffs. Plaintiff Kuendig resides in Guerneville, California.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

      2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Northern District of California.  Additionally, Defendant transacts substantial business in this District, including sales of the Product at issue, and Defendant advertised and marketed the Product at issue to Plaintiff in this District.

      I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California this 5th day of August, 2025.

*/s/ L. Timothy Fisher*
L. Timothy Fisher
